**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **GARY JACKSON** | § | **PLAINTIFFS** |
| **and** | § | |
| **LINDA JACKSON** | § | |
| | § | |
| **v.** | § | **Civil No. 1:23-cv-24-HSO-BWR** |
| | § | |
| **STATE FARM FIRE AND** | § | |
| **CASUALTY COMPANY** | § | **DEFENDANT** |

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION [52] TO STRIKE SUPPLEMENTAL REPORT, AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION [55] TO EXCLUDE BOBBY WARE

In this insurance coverage dispute between Plaintiffs Gary and Linda Jackson ("Plaintiffs") and Defendant State Farm Fire and Casualty Company ("State Farm" or "Defendant"), Defendant moves to exclude Plaintiffs' damages expert Bobby Ware ("Ware") and strike his Supplemental Report. Having considered the parties' arguments, the record, and relevant legal authority, the Court will deny Defendant's Motion [52] to Strike Bobby Ware's supplemental report, and grant in part and deny in part Defendant's Motion [55] to exclude Bobby Ware's testimony.

## I. BACKGROUND

A.   Plaintiffs' allegations in the Amended Complaint [19]

Plaintiffs Gary and Linda Jackson own a residence with a pool house and detached garage in Gulfport, Mississippi. Am. Compl. [19] at 1. They maintained "Dwelling, Other Structures, Personal Property, Debris Removal, and Loss of Use for the Subject Property" coverage on the property with State Farm. *Id.* at 2.

Hurricane Zeta struck the area in October 2020, allegedly knocking down trees, damaging the roof, and causing water damage inside the home. *Id.* at 2–4. Plaintiffs assert that State Farm's adjusters grossly undervalued the property damage after multiple site inspections, leading Plaintiffs to retain a public adjuster. *See id.* State Farm ultimately reinspected the property in March 2022 and paid the Jacksons $55,581.69, but Plaintiffs maintain that this total was still much lower than the true value of their claim. *See id.* A major aspect of the dispute is over the replacement of the roofs on the house, pool house, and detached garage. *See id.* at 3. Plaintiffs contend that they are entitled to damages for State Farm's failure to pay for covered damages under their policy, and for punitive damages for intentional, bad-faith breach of contract. *See id.* at 4–8. Plaintiffs further allege that State Farm's claims-handling constituted intentional infliction of emotional distress. *Id.*

B.   <u>Plaintiffs' initial expert report</u>

The Court's Case Management Order [9] initially set Plaintiffs' deadline to designate expert witnesses as June 6, 2023, with Defendant's deadline to designate experts on July 6, 2023. Order [9] at 4. The Court subsequently extended Plaintiffs' deadline to July 21, 2023, and Defendant's deadline to August 30, 2023. *See* Text Only Order, July 11, 2023.

Plaintiffs disclosed Bobby Ware as an expert on July 21, 2023. Federal Rule of Civil Procedure 26(a)(2)(B) required that Ware's Report disclose "a complete statement of all opinions [he would] express and the basis and reasons for them";

"the facts or data [he] considered"; "any exhibits that" he would use "to summarize or support them"; and his "qualifications."  Fed. R. Civ. P. 26(a)(2)(B)(i)–(iv).  Ware disclosed that his "expert opinion [was] that all line items listed within [his] scope of damage and estimate of repair, which [was] attached" to the report, "constitute[d] items that must be repaired as a result of the storm damage [he] observed in order to restore the property to its pre-loss condition."  Doc. [55-5] at 1.  He attached a line-item estimate of the repairs and their cost based on his assessment of the property, *see* Ex. [52-3] at 5–27, pictures of the property showing the damages, *see id.* at 28–121, measurements he took of several rooms' dimensions, *id.* at 122, and his curriculum vitae ("CV"), *see id.* at 123–24.  Ware's CV stated that he is the President of Teddy Bear Services, a licensed construction contractor, and a building consultant.  *See id.* at 123.  He is also a "Certified Umpire" and "Certified Appraiser."[1]  *Id.* at 124.  Ware's report identifies the major categories of damages as replacing the roofs on the house, detached garage, and pool house; replacing the pool's liner; repairing or replacing fencing, the gazebo, interior wallpaper, the electrical gate, and cabinetry; and debris removal.  *See id.* at 6–27.

The report did not purport to specifically explain the causes of the losses Ware valued in his report.  *See generally id.*  Nor did the line-item estimate account for any depreciation of the damaged items.  *See id.* at 6–27.  The initial report's

---

[1] Ware explained how appraisers determine the scope and value of repairs to damaged property.  Ex. [60-4] at 6.  When two different appraisers value repairs differently, an umpire functions as a "mediator" between the appraisers.  *Id.*

3

estimate mostly covered unrepaired items, though it included a few line items that referenced invoices.  *See id.*

Notably, Plaintiffs' policy with State Farm provides that it will not cover any damages unless a covered "peril"—such as a hurricane—caused the damages.  Ex. [55-1] at 31.  And if the insured has not replaced an item damaged by a covered peril, State Farm will only cover the item's "actual cash value," meaning the cost to repair or replace it less any depreciation in its value before the loss occurred.  *See id.* at 20 ("'[A]ctual cash value' means the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation.").  On the other hand, "when the repair or replacement is actually completed, [State Farm] will pay the covered additional amount [the insured] actually and necessarily spen[t] to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less."  *Id.* at 37.

Defendant disclosed its experts on August 30, 2023.  Doc. [34].  Defendants included a report by Timothy Hassenboehler, PE, a forensic engineer, about the cause and extent of damages to Plaintiffs' property from Hurricane Zeta, Ex. [57-35] at 2, along with a supplemental report addressing roof damage in greater detail, Ex. [57-36].  He opined that Hurricane Zeta did not cause most of the roof damage that Plaintiffs claimed, *see* Ex. [57-36] at 2–3, nor did it cause the interior mold growth or the damage to the gazebo's foundation, *see* Ex. [57-35] at 6–8.  But Hassenboehler did conclude that other losses were consistent with hurricane damage.  For

4

instance, "rust stains [in the pool] were consistent with wind-blown debris . . . as a result of Hurricane Zeta." *Id.* at 8. Defendant also disclosed a report by Jerry Houston reviewing State Farm's estimate and the scope of damages and repairs, Ex. [57-37], a report by Vance Cochran on the necessary repairs to remove the rust stains from the pool—which stated that Plaintiffs could acid-wash the pool to remove the stains without "remov[ing] the plaster and replaster[ing] the pool," Ex. [57-38], and a report by Jack C. Williams, Jr., CPCU, AIC, opining on State Farm's handling of Plaintiffs' claim, Ex. [57-39]. Defendant's experts generally supported State Farm's May 2022 estimate of $70,686.81 in covered losses which, after applying Plaintiffs' deductible, formed the basis of its $55,581.69 payment to Plaintiffs. *See* Ex. [57-27] (State Farm's May 4, 2022 estimate).

Defendant deposed Mr. Ware at 9:42 a.m. local time on Wednesday, October 4, 2023. Ex. [60-4] at 14. Discovery was scheduled to close on Friday, October 6, 2023. Order [9] at 4. Ware testified that he walked through the home with Plaintiffs and inspected the site for damages. Ex. [60-4] at 9. He also took measurements of parts of the property and based his estimates on those measurements. *Id.* at 12. Ware testified about his experience estimating the costs for repairs as a contractor, appraiser, and building consultant. *See id.* at 5–6. Ware admitted that he did not opine on any items' pre-loss depreciation or the causes of any of the damages listed in his report. *Id.* at 14, 23.

During the deposition, Defendant's Counsel pointed out that State Farm had received invoices from Plaintiffs for repairs they had already completed. *See id.* at

15 (Ware testifying that he had not seen the invoices for Plaintiffs' full replacement of all the roofs, but that he needed "to get [his] hands on" it); *see* Invoices at Ex. [60-9] at 144–50.  Ware's original report also contained an estimate of $34,200.00 for debris removal, Ex. [60-4] at 133, but Defendant's Counsel stated, "we've been provided [an estimate] for debris removal by Rick Bradley.  And he's got a total of 13,000 [dollars] and change," *id.* at 19.  The record contains an invoice for $13,642.50 from Rick Bradley for debris removal, *see* Ex. [61-5] at 73–74, which Defendant's Counsel asked Plaintiff Gary Jackson about during his deposition on October 5, 2023, and marked as Exhibit 22 to that deposition, *see id.* at 18.

In addition, Defendant's Counsel pointed out a "typo" in Ware's original report, Ex. [60-4] at 18, which led to the following exchange:

> Defendant's Counsel: Take a look at line item 59.  This is for the carport roof.  And I think this is a typo, but tell me if I'm wrong.  It's got $70,000 --
>
> Ware: That is a typo.
>
> Plaintiffs' Counsel: What are y'all talking about?
>
> Ware: No. 59, [Plaintiffs' Counsel].  What it is, is it's probably – it's square, and the calculator has sometime got changed to squares, and it's calculating 1200 -- instead of 1275 square foot, it's calculating 1275 squares.
>
> Defendant's Counsel: Okay.
>
> Ware: Two seconds, that can be fixed.
>
> Defendant's Counsel: Okay.  Well, I figured that was an error.

*Id.* at 18.  In short, for his estimated value of the repairs to the detached garage roof, Ware had accidentally entered 1,275 *squares* of roofing felt instead of 1,275 *square feet* of roofing felt into the Xactimate program he used to produce his

estimate.  This resulted in an estimate for roofing felt for the garage roof in the amount of $70,138.45; but the estimated cost of roofing felt for the main house roof was $3,899.07.  *Id.* at 132, 130.  Ware also emphasized how easily he could fix the error and provide a supplemental report with a corrected estimate.  *Id.* at 22 ("I can have those corrections to you within an hour after I leave here.").  And he testified that any corrections to his estimate "would decrease" the value of repairs.  *Id.*

Defendant's Counsel also asked Ware about the participation of Jason Perry in preparing the estimate.  Perry is the independent public adjuster the Jacksons hired when they were dissatisfied with State Farm's evaluations.  *Id.* at 11.  Perry is also "one of the owners of the Teddy Bear operation in Jackson."  *Id.* at 12.  Perry's public adjuster license number is listed on the estimate that Ware testified was his own, and the original estimate's letterhead says, "Perry & Associates Public Adjuster LLC."  *Id.* at 12–13; *see* Ex. [52-3].  Ware testified that he produced his estimate in Xactimate based on his own measurements and site inspections, while Perry worked with him on this case by obtaining bid estimates from vendors for the line items that would need to be repaired or replaced.  Ex. [60-4] at 12.  Ware testified that "the scope might have been done, but when Jason got involved, then Jason got the bid for the swimming pool.  So he input that in there.  Jason got the bid for the electrical -- and I'm not saying he did.  I'm just saying that's how it would work."  *Id.*  Ware could not specifically identify the line items for which Perry had obtained bid estimates and input the cost, though he "probably could" if he viewed the estimate on his computer program.  *See id.*

7

The deposition concluded at 11:42 a.m. local time on October 4, 2023.  The parties went back on the record at 1:15 p.m., and Plaintiffs' Counsel stated for the record

> that during Bobby Ware's deposition, certain clerical issues were noted within his report.  And Mr. Ware is available to be back here with the corrections made to his supplement that addresses those issues at 2:30 today, which is the time Mr. Bradley was originally set to be deposed. He can also make himself available at any point in time on Friday, if the defendants would like to ask him any supplemental questions, based on his correcting the errors that were pointed out during his deposition in his scope estimate that he prepared.

*Id.* at 23.  Defendant's Counsel responded that State Farm would "maintain [its] objection to the unseasonable supplementation and untimely supplementation."  *Id.*

At 1:37 p.m., Plaintiffs' Counsel represented that he had, in the meantime, sent Defendant a supplemental report with a revised estimate.  *See id.*; Notice [49] of Supplemental Designation.  Plaintiffs' Counsel "wanted to note that we have obtained the supplement from Mr. Ware that deals with the clerical issues pointed out during his depo, and [he had] provided that to Counsel.  And Mr. Ware [was] available" that day to answer "any further questions."  Ex. [60-4] at 23–24.  In response, "State Farm maintain[ed] its objections."  *Id.*

C.   Plaintiffs' supplemental expert report

Ware's revised estimate, attached to the supplemental report, included several adjustments, the most significant of which was replacing most of the costs he had estimated for the roofs with the amounts Plaintiffs had actually paid two companies, New Horizon Roofing & Exteriors and Gulfeagle Supply.  *See* Ex. [52-4] at 4.  Plaintiffs paid New Horizon Roofing & Exteriors $26,150.00, and Gulfeagle

Supply $33,159.10, according to the estimate.  *See id.*; Ex. [60-9] at 144–47

(Gulfeagle invoice);[2] *id.* at 149–50 (New Horizon Roofing & Exteriors invoice).

Correcting the error in the initial estimate of roofing felt for the carport roof did not

complicate the revision because the invoice subsumed that line item; Ware marked

the revised carport roofing felt line, "per invoice."  Ex. [52-4] at 6.  Ware used the

same demarcation to indicate all the other line items that he replaced with items

contained in invoices throughout his revised estimate.  *See generally id.*

Within the roof categories, the revised report also included two different

amounts for "temporary repairs," meaning "bills paid to tarp [and] un-tarp along

with re-tarp [] the roof," from Joe Coggins, *id.* at 4–5, based on two invoices, *see* Ex.

[61-5] at 80 (invoice from Joe Coggins containing two charges for $2,332.00 for

tarping the main house and pool house roofs, respectively).  Ware also reduced the

estimate for "R&R Gutter / downspout" for the main roof, retained the initial gutter

estimate for the pool house roof, and removed the gutter line item for the carport

roof.  *Compare* Ex. [52-3] at 8–10, *with* Ex. [52-4] at 4–5.  Both estimates contained

a few items—"Tarp – all-purpose-poly," on the main roof for $2,402.90 and on the

pool house roof for $1,373.08, "Digital Satellite System – Detach & reset" for $55.30

on the pool house roof, and "Digital satellite system - alignment and calibration

only" for $165.87—on both estimates.  *See* Ex. [52-3] at 8–10; Ex. [52-4] at 4–5.  All

told, most of the line items in the revised estimates for the roofs were subsumed by

---

[2] The record contains two Gulfeagle invoices, the second of which contains a revised bill of only $32,666.59.  Ex. [60-9] at 146–47.  The second invoice is labeled "after credits" in pen and includes a few deductions for what appear to be unused materials contained in the first invoice.  *Id.*

9

"per invoice," except for a few items that were replaced by other invoices, adjusted to account for more accurate dimensions and costs, or retained from the original estimate.

Beyond revisions to estimates for roof repairs, Ware's supplemental report also replaced a quote from Gate Electronic Environments for $12,858.31 for repairing Plaintiffs' gate with three items based on three invoices: item 4, "Spence Rees" gate operators, for $5,800.00; item 12, "Nav. system," "Key Pad for front gate replaced due to lightening strick, [sic]" for $824.18; and item 13, "Nav system," "replacement of camera at front gate and to rerun underground wire to camera from inside of home," for $4,943.72. *Id.* at 2. The record contains an invoice from Spence Rees for $5,800.00, Ex. [61-5] at 65, from Nav Systems for $1,909.95, *id.* at 69, and from Nav Systems for $3,922.62, *id.* at 70. Ware also replaced a Rick Bradley invoice line item for "electrical" services from the original report for $8,520.44, Ex. [52-3] at 6, with a corrected value of $5,529.87, Ex. [52-4] at 2; *see* Ex. [60-4] at 151 (invoice for $5,529.87 from Rick Bradley). Defendant's Counsel had pointed out this "discrepancy" between the Rick Bradley invoice Plaintiffs had disclosed and Ware's estimate during his deposition, and Ware called the error another "typo." *Id.* at 17. Ware also replaced an estimate of $34,200.00 for debris removal, Ex. [52-3] at 11, with an invoice for debris removal from Rick Bradley for $13,642.50, Ex. [52-4] at 7; *see* Ex. [61-5] at 73 (Rick Bradley Debris Removal Invoice).

In addition, Ware revised the estimate for the wallpaper replacement in the Great Room from $15,292.54 to $13,628.37 based on a revision to the square

footage. *See* Ex. [52-3] at 14; Ex. [52-4] at 10. Ware also cut "Finish hardware" and "Specialty items" from the "Labor Minimums Applied" category, cutting the estimate for the category from $534.48 to $287.41. *See* Ex. [52-3] at 18; Ex. [52-4] at 14. And given work State Farm had already performed and paid for, Ware removed two of the three line items from the Fence category, which reduced that revised estimate from $14,191.53 to $4,910.34. *See* Ex. [52-3] at 12; Ex. [52-4] at 7.

Defendant moves to strike Mr. Ware's supplemental report, *see* Mot. [52], and separately to exclude Ware altogether, *see* Mot. [55]. Defendant's separate Motion [57] for Summary Judgment is based in part on the theory that Plaintiffs cannot prove their case without Ware's expert testimony.

## II. <u>DISCUSSION</u>

### A.   <u>Substantive law</u>

Plaintiffs bring state-law claims against State Farm for breach of their insurance policy. Under the *Erie*[3] doctrine, this Court applies state law when exercising subject-matter jurisdiction under 28 U.S.C. § 1332. "Under Mississippi law, the plaintiff bears the burden of proving his right to recover under an insurance policy." *Tuepker v. State Farm Fire & Cas. Co.*, 507 F.3d 346, 356 (5th Cir. 2007). "That basic burden never shifts from the plaintiff." *Britt v. Travelers Ins. Co.*, 566 F.2d 1020, 1022 (5th Cir. 1978).

In considering an insurance policy, the Court must "render a fair reading and interpretation of the policy by examining its express language and applying the

---

[3] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

ordinary and popular meaning to any undefined terms." *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 609 (Miss. 2009) (internal quotation marks and citation omitted). "In Mississippi, insurance policies[] are contracts, and as such, they are to be enforced according to their provisions." *Id.* (citation omitted). The key issue in a case concerning a claimed breach of an insurance contract is whether the insurer owes any insurance proceeds to the policyholder. *Thomas v. Nationstar Mortg., LLC*, No. 2:22CV88-HSO-LGI, 2023 WL 2780360, at *9 (S.D. Miss. Feb. 6, 2023) (citing *Mahli, LLC v. Admiral Ins. Co.*, No. 1:14-cv-175-KS-MTP, 2015 WL 4915701, at *16 (S.D. Miss. Aug. 18, 2015)).

The insured has the burden of proving his right to recover under a policy, but the insurer has the burden of proving that an exclusion applies. *Tuepker*, 507 F.3d at 356. "[A] plaintiff seeking monetary damages for breach of contract must put into evidence, with 'as much accuracy as' possible, proof of the damages being sought." *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1225 (Miss. 2012) (quoting *Thomas v. Global Boat Builders & Repairmen Inc.*, 482 So. 2d 1112, 1116 (Miss. 1986)). "Without proof of actual monetary damages, a plaintiff cannot recover *compensatory* damages under a breach-of-contract action." *Id.* (emphasis in original).

B.   Defendant's Motion [52] to Strike Ware's supplemental report

Defendant moves to strike Ware's supplemental report on grounds that it changes his estimate substantially and is based on information that was available to Ware before the initial expert disclosure deadline, such that the supplemental

report is in fact an untimely initial report.  *See* Memo [53].  Defendant is correct that a disclosure containing "a complete statement of all opinions [that Ware would] express and the basis and reasons for them," "the facts or data considered by the witness in forming them," "any exhibits that will be used to summarize or support them," and the other information required under Federal Rule of Civil Procedure 26(a)(2)(B) was due "at the time[] . . . that the court order[ed]."  Fed. R. Civ. P. 26(a)(2)(D); *see Elliot v. Amadas Indus., Inc.*, 796 F. Supp. 2d 796, 802 (S.D. Miss. 2011) ("If the supplemental report is comprised of new, previously undisclosed opinions, it was due on . . . Plaintiffs' [initial] designations deadline.").  On the other hand, a party "must supplement or correct" a disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A).  Plaintiffs' initial disclosure deadline passed on July 21, 2023, Text Only Order, July 11, 2023, and Plaintiffs did not file notice of their service of Ware's supplemental report until October 4, 2023, Notice [49].

Plaintiffs do not focus on contesting that the supplemental report was actually an untimely initial report, *see* Memo [62], and the Court can safely assume that it was, given that it changed the estimates for a large portion of the line items of damages based on information previously available to Mr. Ware, *see* Ex. [60-9] at 140–70 (showing invoices incorporated into the revised estimate dated in 2021 for repairs such as the replacement of the roof and debris removal).  Although

13

supplementation to correct clerical errors can be proper under Rule 26(e), Ware's revised estimate is too substantially different from his initial estimate to qualify as a proper supplement.  "It is not proper federal practice to assume that one can submit an incomplete expert report only to provide new opinions and/or new information later." *Old Canton Rd. Apartments, Ltd. v. Topvalco, Inc.*, No. 3:20-CV-797-DPJ-FKB, 2023 WL 3830368, at *13 (S.D. Miss. June 5, 2023) (internal quotation marks, alteration, and citation omitted).

Because Plaintiffs "fail[ed] to provide information or identify a witness as required by Rule 26(a) or (e)," the Court cannot permit them to call Mr. Ware to testify at trial based on his supplemental report unless permitting them to do so would be "harmless," or if Plaintiffs' failure of disclosure was "substantially justified."  Fed. R. Civ. P. 37(c)(1).  Plaintiffs offer no viable explanation for their failure but argue that the improper disclosure did not prejudice Defendant because they had already disclosed the information that the supplement contained in discovery by August 2023.  *See* Ex. [60-7] (May 26, 2023 Correspondence Accompanying Plaintiffs' Production of PLF 000296-000351); Ex. [60-9] (August 9, 2023 Email Forwarding Perry Documents Subject to Subpoena with Documents Attached, which included invoices attached).  Plaintiffs further point out that Defendant's Counsel stated at Ware's deposition that he thought he noticed the typo in Ware's initial estimate of the quantity of roof felt required for the garage roof. *See* Ex. [60-4] at 18.

14

Rule 37(c) "provides a self-executing sanction for failure to make a disclosure required by Rule 26(a), without need for a motion under subdivision (a)(2)(A)."  Fed. R. Civ. P. 37, advisory notes to 1993 amendment.  The advisory notes explain:

> Limiting the automatic sanction to violations "without substantial justification," coupled with the exception for violations that are "harmless," is needed to avoid unduly harsh penalties in a variety of situations: *e.g.*, the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party; or the lack of knowledge of a pro se litigant of the requirement to make disclosures.

*Id.*  The Court considers four factors to determine whether to exclude evidence that a party failed to properly disclose: "(1) [the party's] explanation for its failure to disclose the evidence, (2) the importance of the evidence, (3) the potential prejudice to [the other party] in allowing the evidence, and (4) the availability of a continuance."  *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 280 (5th Cir. 2009).

Here, the first factor favors State Farm because Plaintiffs do not offer an explanation for their failure to supplement Mr. Ware's report with the invoices in a timely manner.  As to the second factor, the Fifth Circuit has held that the importance of the evidence weighed in favor of the proponent of the evidence when untimely-designated experts were "necessary to [the plaintiff's] case" because the plaintiff could not prove damages without expert testimony about "the cost to rebuild his house."  *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007).  That is likewise the case here, at least as to a substantial portion of the costs to repair Plaintiffs' property.  *See supra*, Part II.C.

The Court is of the view that the third factor, prejudice to Defendant, is critical in this case given Plaintiffs' lack of any adequate explanation for their improper disclosure. *See* Fed. R. Civ. P. 37(c)(1) (requiring exclusion "unless the failure was substantially justified *or* is harmless") (emphasis added). The late designation of an expert can be prejudicial when that late designation "would have disrupted the court's discovery schedule and the opponent's preparation," and the defendant relied "on Plaintiff's apparent decision to forgo expert testimony." *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990). That said, a party's generalized assertion of prejudice based on attorney preparation does not necessarily qualify as prejudice supporting exclusion. *See Betzel*, 480 F.3d at 708 (reversing the district court's exclusion of untimely-designated expert witnesses when the defendant's "motion for summary judgment only trivially relied on [the plaintiff's] lack of expert testimony," and where the defendant-insurer's "adjusters had met [the experts] during the remediation of [the plaintiff's] home").

Here, Ware's supplemental report corrected clerical errors that State Farm's counsel had, based on the deposition transcript, already noticed. *See* Ex. [60-4] at 15, 17–19. The report also incorporated invoices that Plaintiffs had produced to State Farm in discovery. State Farm had conducted its own inspections of the property such that it would have known the correct measurements of the Great Room, which Ware corrected in his revised estimate. Ware's estimate also deleted fence-repair costs based on work State Farm itself had already performed and paid

for, meaning that State Farm knew that the work had already been completed and should be removed from Ware's estimate.

Importantly, Plaintiffs' policy provides that if a damaged item has actually been repaired, State Farm "will pay the covered additional amount [Plaintiffs] actually and necessarily spen[t] to repair or replace the damaged part of the property." Ex. [55-1] at 37. Defendant must therefore pay the cost shown in the invoices—without deductions for depreciation—*if* the costs went toward necessarily replacing or repairing items damaged by Hurricane Zeta. Thus, for line items in the revised estimate that are now based on actual invoices, depreciation is no longer at issue and the inquiry is narrowed to the questions of causation and necessity. And Defendant has generally challenged Plaintiffs' causation evidence as to all of the line items in Ware's estimates in its Motion [57] for Summary Judgment and Motion [55] to Exclude Ware.

Defendant also does not point to a specific line item that changed in the supplemental report and outline how the change prejudiced it. *See* Memo [53] at 7–8. Rather, State Farm broadly argues that it lost the opportunity to properly prepare for Ware's deposition and obtain rebuttal experts as needed to counter the information disclosed in the supplemental report. *See id.* at 7–8. While the Court is sensitive to these concerns, general arguments about prejudice to a party's ability to respond to untimely-disclosed evidence, without more, do not carry the day under Rule 37. *See Betzel*, 480 F.3d at 708. Defendant does not point out a change in the revised estimate that it cannot effectively counter. The Court is instead persuaded

by Plaintiffs' line-by-line accounting in their Memorandum [62] of the revisions to the estimate and why they do not prejudice Defendant.

As to the fourth factor, the Fifth Circuit has "repeatedly emphasized that a continuance is the preferred means of dealing with a party's attempt to designate a witness out of time." *Campbell v. Keystone Aerial Survs., Inc.*, 138 F.3d 996, 1001 (5th Cir. 1998) (internal quotation marks and citation omitted). But the Fifth Circuit has also "recognized that a continuance will 'not deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders.'" *Stewart v. Gruber*, No. 23-30129, 2023 WL 8643633, at *7 (5th Cir. Dec. 14, 2023) (quoting *Geiserman*, 893 F.2d at 792).

Here, neither party contends that a continuance is appropriate. Plaintiffs did offer Defense Counsel the opportunity to continue deposing Mr. Ware to ask questions about the supplemental report—either later that afternoon or two days later, on the final day of discovery—but Defense Counsel declined that invitation in order to maintain his objection to the supplemental report as untimely. *See* Ex. [60-4] at 23–24. But Plaintiffs do not claim that a continuance would be appropriate to permit State Farm to depose Ware beyond the discovery deadline, *see* Memo [62], which passed on October 6, 2023, only two days after their supplemental disclosure, s*ee* Order [9]. The Court does not find that the fourth factor weighs heavily in one direction or the other, but notes that Defendant has not asserted any specific need for a continuance.

18

To be sure, Rule 37(c)'s "self-executing sanction for failure to make a disclosure required by Rule 26(a)" does not reflect a liberal policy toward untimely and improper disclosures.  Fed. R. Civ. P. 37, advisory notes to 1993 amendment.  But here, the Court is of the view that Plaintiffs' improper supplementation was "harmless."  Fed. R. Civ. P. 37(c)(1).  The Court will accordingly deny Defendant's Motion [52] to Strike the supplemental report.  But as the Court will discuss next, that does not mean that Ware will necessarily be permitted to testify about all of the items in the supplemental report.

C.    Defendant's Motion [55] to Exclude Ware under Federal Rule of Evidence 702

State Farm argues that Ware must be excluded under Federal Rule of Evidence 702 because Ware will not opine on causation—and disclaims he is qualified to do so, and causation is a necessary element of proving liability, rendering his opinions irrelevant and unhelpful to the jury.  Memo [56] at 3–6, 10–11.  Alternatively, Defendant argues that Ware's opinions are unhelpful and irrelevant to consideration of damages to unrepaired items because he does not opine on depreciation, and Plaintiffs' policy requires deductions for depreciation to calculate damages for unrepaired items.  *Id.*  State farm further contends that Ware collaborated with Jason Perry to such an extent that he was merely a mouthpiece for Perry's opinions.  *Id.* at 7–9.  Finally, Defendant argues that Ware's opinions should be excluded under Federal Rule of Evidence 403 for the same reasons underlying its Rule 702 challenge, and because Ware is not familiar with the terms of Plaintiffs' insurance policy.  *See id.* at 10–11.

19

The party offering a proposed expert has the burden of proving by a preponderance of the evidence that the expert's proffered testimony satisfies Rule 702. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002). Rule 702 provides that a witness "who is qualified as an expert by knowledge, skill, experience, training, or education" may testify as an expert if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Therefore, "expert testimony is admissible only if it is both relevant and reliable." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002).

Rule 702(a)'s requirement "that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.' . . . goes primarily to relevance." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) (quoting Fed. R. Evid. 702(a)). To that end, "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* at 591–92. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (citation omitted). For example, "an expert's demonstration that does not accurately reconstruct the facts of the case at bar fails to 'help' the trier of fact." Charles Alan Wright et al., *Factors*

*Considered: Relevance, Need, and Infringement on Role of Judge or Jury*, 29 Fed. Prac. & Proc. Evid. § 6265.2 (2d ed. 2023) (citation omitted).  Generally speaking, "[e]xpert testimony on damages frequently will help the trier of fact because damage calculations often involve complex aspects of economics and mathematics." Charles Alan Wright et al., *Rule 702(a) Applied: Patterns and Trends*, 29 Fed. Prac. & Proc. Evid. § 6265.4 (2d ed. 2023).

An expert's opinion is not helpful when it does not fit the elements of the proponent's claim or comport with the applicable burden of proof.  *See Pipitone*, 288 F.3d at 245 ("Dr. Millet's testimony on causation is not helpful to the fact-finder because of his inability to conclude that it was more likely than not that the Synvisc caused the infection in Pipitone's knee.  A perfectly equivocal opinion does not make any fact more or less probable and is irrelevant under the Federal Rules of Evidence."); *United States v. Dixon*, 413 F.3d 520, 524 (5th Cir. 2005), *aff'd*, 548 U.S. 1 (2006) ("To the extent that Dr. Myers's proffered testimony described Dixon's subjective perceptions of danger, it was not relevant to the inquiry at hand [about Dixon's duress defense]—that is, to whether such perceptions were well-grounded or objectively reasonable under the circumstances.  As such, it could not have assisted the trier of fact in making any determination of material fact.") (internal quotation marks, alterations, and citations omitted).  Here, Plaintiffs are "seeking monetary damages for breach of contract," and "must put into evidence, with 'as much accuracy as' possible, proof of the damages being sought."  *Bus. Commc'ns, Inc.*, 90 So. 3d at 1225 (quoting *Thomas*, 482 So. 2d at 1116).

Turning first to Plaintiffs' damages for items that were not repaired, Ware's opinion is not helpful because it does not factor in depreciation for these items, *see* Ex. [60-4] at 23, a plainly necessary component of damages under the insurance policy, *see* Ex. [55-1] at 20.  An opinion on damages without considering depreciation does not provide the jury with a helpful estimate as to unrepaired items.  Such an opinion does not "put into evidence, with 'as much accuracy as' possible, proof of the damages being sought."  *Bus. Commc'ns*, 90 So. 3d at 1225 (citation omitted).  And Plaintiffs have no other expert to establish depreciation, even though courts generally require expert testimony to establish depreciation. *See, e.g.*, *Penthouse Owners Ass'n v. Certain Underwriters at Lloyd's*, No. 1:07CV568 LTS-RHW, 2009 WL 617914, at *1–2 (S.D. Miss. Mar. 11, 2009) (discussing how issues of valuation of damages, including calculation of replacement cost value, actual cash value, and depreciation, in a property insurance dispute case require expert testimony).

If offered at trial, Ware's opinion on Plaintiffs' damages for unrepaired items would provide the jury with an estimate of those items' *full* repair or replacement costs, which the jury cannot award under the terms of the policy.  And even assuming such an opinion were somehow helpful, it would be substantially more misleading and confusing than probative, and is thus also excludable under Federal Rule of Evidence 403.  *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or

more of the following: unfair prejudice, confusing the issues, misleading the jury,

undue delay, wasting time, or needlessly presenting cumulative evidence.").

Ware likewise testified at his deposition that he will not offer any opinion on

the causes of Plaintiffs' losses in this case.  *See* Ex. [60-4] at 14, 23.  Ware is

Plaintiffs' only expert, and for many of the line items in his report, Plaintiffs cannot

establish causation by lay testimony.  "[T]he distinction between lay and expert

witness testimony is that lay testimony results from a process of reasoning familiar

in everyday life, while expert testimony results from a process of reasoning which

can be mastered only by specialists in the field." *United States v. Sosa*, 513 F.3d

194, 200 (5th Cir. 2008) (quoting Fed. R. Evid. 701, advisory committee notes to

2000 amendments).

This Court has explained how structural damages to homes, the long-term

effects of moisture on a house, and other categories of property damage require

expertise to accurately understand, and are therefore not properly the subject of lay

opinion on causation.  *See Robinson-Lewis v. State Farm Fire & Cas. Co.*, No.

1:22CV186-LG-RPM, 2023 WL 7929006, at *2–4 (S.D. Miss. June 5, 2023) (granting

summary judgment to insurer when the Court excluded the plaintiffs' expert on the

cause of "any covered damage for which [the plaintiffs had] not been compensated,"

which the plaintiffs claimed included covering the replacement of their roof, given

the plaintiffs could not "demonstrate that State Farm breached the insurance

contract without expert testimony"); *Parker v. State Farm Fire & Cas. Co.*, No. 2:22-

CV-45-HSO-BWR, 2023 WL 4425599, at *3–4 (S.D. Miss. May 22, 2023) (granting

summary judgment to insurer after excluding the plaintiff's expert on causation and scope of damages in a dispute about insurance coverage for damages after a windstorm); *O'Neil v. Allstate Prop. & Cas. Ins. Co.*, No. 5:17-CV-70-KS-MTP, 2018 WL 4001978 at *5 (S.D. Miss. June 25, 2018) ("[T]estimony regarding the causation of structural damage of this sort [i.e., property and foundation damages allegedly caused by a lightning storm or subsequent attempts to repair] exceeds the scope of permissible opinion testimony for lay witnesses because it requires specialized or technical knowledge, experience, or training."); *Palmer v. Sun Coast Contracting Servs., Inc.*, No. 1:15cv34-HSO-JCG, 2017 WL 3222009, at *2 (S.D. Miss. July 27, 2017) ("Plaintiffs offer no legal authority to support their position that they themselves as lay witnesses are qualified to offer opinions on causation as it pertains to [alleged mold, mildew, or termite damage] . . . because it is clearly based on scientific, technical, or other specialized knowledge within the scope of Rule 702."); *see also Hardin v. Town of Leakesville*, 345 So. 3d 557, 565 (Miss. 2022) (concluding that whether water seepage proximately caused damage to the plaintiff's home required specialized knowledge under Rule 702 because the plaintiff and her witnesses did not observe the water seepage).

Accordingly, Ware's opinion is not helpful as to any line items for which Plaintiffs cannot otherwise establish the cause of the loss through lay testimony because the insurance policy only covers damages caused by covered perils.  *See* Ex. [55-1] at 31.  An opinion about the cost to repair or replace an item, without evidence that the insurance policy covers the loss, is not helpful to the jury, and is

therefore not relevant.  Even if such an opinion were helpful, it would be substantially more misleading and confusing than probative, and thus excludable under Rule 403.

The Court is of the view, however, that if there is admissible lay testimony on causation as to certain damages, Ware's opinions about those line items would not be excludable if those items have been repaired, even though he does not opine on depreciation or causation.  Again, Ware will opine on damages but not causation— meaning, not on liability.  He cannot opine on the cause of any damages.  Nor can he opine on the cost to repair—and, thus, the damages for—any unrepaired items, given he does not opine on depreciation.  But he can opine on whether the repairs that Plaintiffs have already paid for were actually necessary, as State Farm's policy requires, if there is other admissible lay testimony sufficient to establish causation for that loss.  *See* Ex. [55-1] at 37 ("[W]hen the repair or replacement is actually completed, [State Farm] will pay the covered additional amount [the insured] actually and necessarily spen[t] to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less.").

For example, Plaintiffs have evidently already paid $13,642.20 for Rick Bradley to complete "debris removal"—meaning mostly downed tree removal—from the property.  *See* Ex. [52-4] at 7 (line item in supplemental estimate); Ex. [60-9] at 152–53 (invoice for $13,642.50).  State Farm estimated debris removal would cost

$3,820.30.[4]  Ex. [57-27] at 17.  The estimate included no deduction for depreciation, presumably because a debris removal service would not involve any depreciation. *See* Ex. [55-1] at 27 (providing, under "Additional Coverages," that State Farm "will pay the reasonable expenses [the insured] incur[s] in the removal of debris of covered property damaged by a loss insured.  This expense is included in the limit applying to the damaged property").  But Ware can only opine on the total cost of repairs for replaced items if there is admissible lay testimony offered by Plaintiffs at trial on causation—*e.g.*, that they witnessed the hurricane knock down trees on their property, or that they reasonably inferred that the hurricane knocked those trees down.  *See* Fed. R. Evid. 701(a) (providing that lay "testimony in the form of an opinion is limited to one that is . . . rationally based on the witness's perception").

The Court will also reject Defendant's argument that Ware's opinion is excludable under a theory that he merely parroted Jason Perry's opinions, whom Plaintiffs did not disclose as an expert.  As discussed above, an expert's opinion must be "based on sufficient facts or data," Fed. R. Evid. 702(b), and an expert's report "must contain" "a complete statement of all opinions the witness will express and the basis and reasons for them," along with "the facts or data considered by the witness in forming them," Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii).  Further, "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."  Fed. R. Civ. P. 703.  An expert may also rely on

---

[4] Exhibit [60-9] includes comments on Bradley's invoice, which point out policy limits on coverage for tree removal.  Ex. [60-9] at 16; *see* Ex. [55-1] at 27–28 (policy on "Trees, Shrubs, and Landscaping").

inadmissible evidence "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." *Id.*

If Ware submitted a report or estimate he did not prepare, or if he was merely the mouthpiece for an undisclosed expert, then he could not testify at trial. *See Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524 (5th Cir. 2013) ("Rule 703 was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." (internal quotation marks and citation omitted)); *Robinson-Lewis*, 2023 WL 7929006, at *3 (excluding a damages expert when he relied on a valuation report prepared by "other persons whose qualifications and methodology [were] unknown," and where he "provided no explanation of the methodology he used to determine that the amount of Plaintiffs' damages either equaled or exceeded the amount listed in the [] report" prepared by the other persons). Were Ware a parrot for Perry, "[a]t trial, [Ware would] be unable to explain the basis for the costs listed in [Perry's] itemized estimates." *Jeanes v. McBride*, No. CV 16-1259, 2019 WL 2622466, at *4 (W.D. La. June 25, 2019).

But Ware testified at his deposition that he prepared the estimate. *See* Ex. [60-4] at 12. Perry obtained "bid[s]" from vendors for some of the line items that Ware included in the estimate. *Id.* Ware determined what items needed to be repaired or replaced and their dimensions—the substance of his opinion on Plaintiffs' damages. *See id.* at 11 (explaining how he "originally . . . work[ed] up a

report based on the damages that [Plaintiffs] showed [him]" to determine what it would "take to fix the house").  Defendant also did not identify a line item that Ware could not intelligently discuss because he had merely submitted an estimate that Perry in fact prepared.  *See generally* Memo [56].  The Court will not exclude Ware's testimony because he delegated obtaining specific bids to Perry.

The Court will, however, deny State Farm's Motion [55] without prejudice to any questions Defendant may wish to ask Ware at trial about Perry's participation in producing the estimate.  The Court notes, for example, that the pictures of the home attached to Ware's Supplemental Report [52-4] indicate, "Taken By: Perry 3/19/21."  *See* Ex. [52-4] at 16–109.  And the Court considers it relevant that Ware could not identify which line items Perry obtained the bids for.  Whether Perry in fact completed more substantive work on the estimate than Ware admitted at his deposition may go to the weight of Ware's testimony at trial.  *See United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., State of Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." (internal quotation marks and citation omitted)).

Finally, the Court is not persuaded that Ware should be excluded because he is unfamiliar with Plaintiffs' policy.  "[T]he interpretation of policy provisions is an issue of law and is within the province of the Court . . . ," *Tejedor v. State Farm Fire & Casualty Co.*, 2007 WL 162180, *1 (S.D. Miss. Jan. 16, 2007), and the Court has

28

already addressed the problems with Ware's lack of an opinion on necessary elements of a breach-of-contract claim given the policy's terms.

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant State Farm Fire and Casualty Company's Motion [52] to Strike Bobby Ware's Supplemental Report is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendant State Farm Fire and Casualty Company's Motion [55] to Strike Bobby Ware is **GRANTED IN PART**, in that Bobby Ware is prohibited from testifying about the damages to any unrepaired items, or to items where causation cannot be established by lay testimony, and **DENIED IN PART**, as to damages for repaired items for which Plaintiffs are able to offer admissible lay opinion testimony on causation.

**SO ORDERED** this the 6th day of March, 2024.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE