IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| GARY JACKSON | § | PLAINTIFFS |
| and | § | |
| LINDA JACKSON | § | |
| | § | |
| v. | § | Civil No. 1:23-cv-24-HSO-BWR |
| | § | |
| STATE FARM FIRE AND | § | |
| CASUALTY COMPANY | § | DEFENDANT |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT STATE FARM FIRE AND CASUALTY
COMPANY'S MOTION [57] FOR SUMMARY JUDGMENT**

In this insurance coverage dispute between Plaintiffs Gary and Linda

Jackson ("Plaintiffs") and Defendant State Farm Fire and Casualty Company

("State Farm" or "Defendant"), Defendant moves for summary judgment on grounds

that Plaintiffs—by their own admission—lack expert testimony on causation and

depreciation, two elements of their claim that State Farm asserts are necessary.

Mot. [57]; Memo [58].  Defendant alternatively moves for partial summary

judgment on Plaintiffs' claims for bad-faith and extra-contractual damages, arguing

that it at least had arguable bases for denying coverage as to some items for which

Plaintiffs claim losses under their insurance policy with State Farm, and for its

claims-handling decisions.  Mot. [57]; Memo [58].

The Court broadly agrees with Defendant on both counts.  Some of Plaintiffs'

claimed losses for which they assert that State Farm improperly limited or denied

coverage require expert testimony to establish causation.  *See* Order [93] at 23–24

(collecting cases).  Plaintiffs lack such expert testimony.  Causation aside, for any

unrepaired items, Plaintiffs also lack any evidence on depreciation, and therefore cannot establish damages, a necessary element of their claim for any unrepaired items. *See id.* at 22. But the Court does not agree that *every* item of damages sought by Plaintiffs necessarily requires expert testimony to establish causation, and Plaintiffs need not show depreciation to establish damages for items that have been repaired. *See id.* at 25–26.

The Court will therefore grant Defendant's Motion [57] for Summary Judgment in part as to those items of damages for which Plaintiffs cannot establish causation without expert testimony, and as to any unrepaired items. The Motion [57] will be denied in part as to repaired items for which Plaintiffs can establish causation through admissible lay testimony.

Further, the Court finds that Defendant had arguable bases for its claims decisions and payments to Plaintiffs, regardless of whether Defendant in fact breached the insurance policy. Accordingly, summary judgment will be granted on Plaintiffs' claims for extra-contractual and punitive damages.

## I. BACKGROUND

### A.    Plaintiffs' allegations in the Amended Complaint [19]

Plaintiffs Gary and Linda Jackson own a residence with a pool house and detached garage in Gulfport, Mississippi. Am. Compl. [19] at 1. They maintained "Dwelling, Other Structures, Personal Property, Debris Removal, and Loss of Use for the Subject Property" insurance coverage on the property with State Farm. *Id.* at 2. Hurricane Zeta struck the area in October 2020, allegedly knocking down

trees, damaging the roof, and causing water damage inside the home.  *Id.* at 2–4.
Plaintiffs assert that State Farm's adjusters grossly undervalued the property
damage after multiple site inspections, leading Plaintiffs to retain a public adjuster.
*See id.*  State Farm ultimately reinspected the property in March 2022 and paid the
Jacksons $55,581.69, but Plaintiffs maintain that this total was still much lower
than the true value of their claim.  *See id.*  A major aspect of the dispute is over the
replacement of the roofs on the house, pool house, and detached garage.  *See id.* at
3.  Plaintiffs contend that they are entitled to damages for State Farm's failure to
pay for covered damages under their policy, for extra-contractual damages for
expenses, attorney's fees, and mental anguish, and for punitive damages for
intentional, bad-faith breach of contract.  *See id.* at 4–8.  Plaintiffs further allege
that State Farm's claims-handling constituted intentional infliction of emotional
distress.  *Id.*

B.   <u>Defendant State Farm's Claim-Handling</u>

Hurricane Zeta made landfall on the Mississippi Gulf Coast on October 28,
2020.  *Hurricane Zeta 2020*, National Weather Service, https://www.weather.gov
/tae/zeta2020 (last visited March 19, 2024).  State Farm's claim notes indicate that
Plaintiff Gary Jackson submitted a claim for Hurricane Zeta damages on November
2, 2020, Ex. [57-4] at 32, and that he reported "shingle loss[,] tree damage[,]
lightning, roof damage, shed [damage], [and] fence" damage, *id.*

State Farm adjuster Malcolm Price inspected the Jacksons' property on
November 17, 2020.  *Id.* at 30–31.  He reported damage to the rear slope of the main

house's roof, fence damage, and that "[n]o interior damage [was] noted or claimed at the time of the inspection." *Id.* Price took photos of the property and completed scope sheets based on his inspection. *Id.* He compiled an estimate on November 19, 2020, and found that the Jacksons had sustained $8,772.66 (including service sales tax) in losses for their main house, $11,561.86 (including service sales tax) in losses for "other structures,"[1] and $410.82 for tree debris removal. Ex. [57-8]. Price informed Plaintiffs that these totals, given deductions for depreciation, were less than their $21,560 Hurricane deductible, *see* Ex. [55-1] at 7, and that they would need to submit an itemized estimate from their contractor if the contractor assessed further damages, *see* Ex. [57-4] at 30.

On January 11, 2021, State Farm adjuster Emmanuel Doku spoke with Gary Jackson on the phone, who was "not happy with the structural damage inspection" that State Farm had performed. *Id.* at 27. According to the note, Mr. Jackson advised that he had consulted with two contractors but was "not in a hurry to send in" an itemized estimate for damages from his contractors. *Id.*

Plaintiffs sent State Farm their own contractors' estimate on May 24, 2021. Ex. [57-10] at 1. Bobby Ware, President of Teddy Bears Restoration, produced the estimate. *Id.* The report indicated he had inspected the property on March 19, 2021. *Id.* at 2. The estimate, which contained no depreciation deductions, called for $186,239.84 in total repairs and replacements, which included full replacement of

---

[1] The Jacksons' policy provides that State Farm will "cover other structures on the residence premises, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures." Ex. [55-1] at 24.

the roofs on the main house, pool house, and detached garage, and $34,200 in debris removal.  *See* Ex. [57-10] at 3–16.  Ware's estimate did not include any repairs for interior damage or damage to the Jacksons' pool.  *See id.*  Following a conversation with State Farm, Ware submitted another estimate, dated May 25, 2021, which contained $183,129.49 in repairs, and included line items for pool and gazebo bids with the amounts not filled out.  Ex. [57-11] at 16, 3.

State Farm scheduled a second inspection in early June 2021, which was cancelled due to a family emergency.  Ex. [57-4] at 26.  On June 28, 2021, Jason Perry of Perry & Associates Public Adjuster LLC sent State Farm a letter of representation, revised estimate, and demand for appraisal on Plaintiffs' behalf. Ex. [57-12].  State Farm's claim notes reflect several unsuccessful attempts to reach Mr. Perry by mail and by phone to discuss the case.  Ex. [57-4] at 21–22.  State Farm denied appraisal in a letter dated July 12, 2021, because it disagreed on the cause of many of the Jacksons' claimed damages.  Ex. [57-16].  The parties agreed to an August 30, 2021 second inspection, which was rescheduled to September 6, 2021, because of Hurricane Ida.  *See* Ex. [57-4] at 19–20.

During the second inspection, State Farm did not note any additional damages to the pool house or main house roofs, though it noted damage to gutters. *Id.*  There were three missing shingles on the detached garage roof and "6LF of missing ridge cap."  *Id.*  Electrical damage and damage to the gazebo, pool, and mechanical gate were observed, but State Farm determined that it needed additional documentation for the amounts for repairs and cause of those issues.  *See*

5

*id.* at 18–20.  State Farm also listed discrepancies it found in Perry's estimate.  *See id.*  The inspection also revealed interior water damage.  *Id.*

After reaching out to Perry several times, *id.* at 14–16, State Farm received documentation concerning the pool, gazebo, and mechanical gate on October 25, 2021, Ex. [57-21].  State Farm found the information insufficient to justify further payments, Ex. [57-4] at 14, and mailed Perry a letter outlining requests for additional information on October 26, 2021, Ex. [57-22].

Perry emailed State Farm additional documentation on December 1, 2021. Ex. [57-23].  This included an itemized invoice for tree removal of $13,642.50 from Rick Bradley, pictures of rust stains in the Jacksons' pool, and an itemized invoice from Duprey Electric, LLC, for repairs to mechanical gate components damaged by a lightning strike and power surge.  *Id.*  State Farm noted that these documents did not support another payment because of a discrepancy between the type of gate motor on the electrician's invoice and the one the Jacksons actually had on the date of the loss, the tree invoice had no picture to substantiate the tree debris, and the photographs of the pool only showed damages to the liner that may not necessitate fully resurfacing the pool.  Ex. [57-4] at 13.

State Farm inspected the Jacksons' property again on January 18, 2022.  *Id.* at 9.  The State Farm adjuster went through the property with Bobby Ware and noted that the Jacksons had fully replaced their roofs.  *Id.*  They also noticed interior damages, though State Farm's adjuster did not necessarily find all the interior damage Hurricane Zeta-related.  *See id.*  State Farm's adjuster then

attempted to contact Rick Bradley, Duprey Electric, and Premier Pool and Spa—the Jacksons' pool company—to substantiate the Jacksons' claims for debris removal, mechanical gate services, and pool resurfacing. *See id.* The adjuster's notes indicate he informed Perry over the phone in February 2022 that he had not been able to substantiate those claims, and that an engineer would need to inspect the "pool, gazebo, wind[ow] trim, and office" to determine the scope of damages to those items. *Id.* at 8.

On March 14, 2022, Engineer Byron Hassenboehler inspected the Jacksons' home. Ex. [57-35] at 2. Hassenboehler concluded, *inter alia*, that the pool liner and two interior windows were damaged by wind-blown debris during Hurricane Zeta, but that damage to the gazebo floor tiles and the interior fungus growth were not storm-related. *See id.* at 6–8. State Farm's adjuster also continued to investigate whether the pool needed to be resurfaced to address the rust stains and determined that acid-washing the liner would suffice. *See* Ex. [57-4] at 4–5. State Farm eventually sent a revised estimate and a $55,581.69 payment to the Jacksons on May 4, 2022. Ex. [57-27]. The next noted contact between the Jacksons and State Farm is receipt of a letter of representation from Plaintiffs' Counsel dated June 16, 2022. Ex. [57-29] (letter of representation); *see* Ex. [57-4] at 3 (claim note discussing receipt of the letter). Plaintiffs filed their Complaint in state court on December 15, 2022. Doc. [1-1].

C.    Plaintiffs' initial expert report

Plaintiffs retained Bobby Ware to prepare an estimate of Plaintiffs' claimed

losses in this case.  Doc. [55-1].  Ware disclosed that his "expert opinion [was] that

all line items listed within [his] scope of damage and estimate of repair, which [was]

attached" to the report, "constitute[d] items that must be repaired as a result of the

storm damage [he] observed in order to restore the property to its pre-loss

condition."  *Id.* at 1.  He attached a line-item estimate of the repairs and their cost

based on his assessment of the property, *see* Ex. [52-3] at 5–27, pictures of the

property showing the damages, *see id.* at 28–121, measurements he took of several

rooms' dimensions, *id.* at 122, and his curriculum vitae, *see id.* at 123–24.  Ware's

report identifies the major categories of damages as replacing the roofs on the

house, detached garage, and pool house; resurfacing the pool; repairing or replacing

fencing, the gazebo, interior wallpaper, the electrical gate, and cabinetry; and debris

removal.  *See id.* at 6–27.  The report did not purport to opine on the causes of the

losses Ware valued in his report, and the line-item estimate did not account for any

depreciation of the damaged items.  *See id.* at 6–27.  The initial report's estimate

mostly covered unrepaired items, though it included a few line items that

referenced invoices.  *See id.*

Importantly, Plaintiffs' policy with State Farm provides that it will not cover

any damages unless a covered "peril"—such as a hurricane—caused the damages.

Ex. [55-1] at 31.  And if the insured has not replaced an item damaged by a covered

peril, State Farm will only cover the item's "actual cash value," meaning the cost to

repair or replace it less any depreciation in its value before the loss occurred.  *See id.* at 20 ("'[A]ctual cash value' means the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation.").  On the other hand, "when the repair or replacement is actually completed, [State Farm] will pay the covered additional amount [the insured] actually and necessarily spen[t] to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less."  *Id.* at 37.

Defendant disclosed its experts on August 30, 2023.  Doc. [34].  Defendants included a report by Timothy Hassenboehler, PE, a forensic engineer, about the cause and extent of damages to Plaintiffs' property from Hurricane Zeta, Ex. [57-35] at 2, along with a supplemental report addressing roof damage in greater detail, Ex. [57-36].  He opined that Hurricane Zeta did not cause most of the roof damage that Plaintiffs claimed, *see* Ex. [57-36] at 2–3, nor did it cause the interior mold growth or the damage to the gazebo's foundation, *see* Ex. [57-35] at 6–8.  But Hassenboehler did conclude that other losses were consistent with hurricane damage.  For instance, "rust stains [in the pool] were consistent with wind-blown debris . . . as a result of Hurricane Zeta."  *Id.* at 8.

Defendant also disclosed a report by Jerry Houston reviewing State Farm's estimate and the scope of damages and repairs, Ex. [57-37], a report by Vance Cochran on the necessary repairs to remove the rust stains from the pool—which stated that Plaintiffs could acid-wash the pool to remove the stains without

"remov[ing] the plaster and replaster[ing] the pool," Ex. [57-38], and a report by Jack C. Williams, Jr., CPCU, AIC, opining on State Farm's handling of Plaintiffs' claim, Ex. [57-39]. Defendant's experts generally supported State Farm's May 2022 estimate of $70,686.81 in covered losses which, after applying Plaintiffs' deductible, formed the basis of its $55,581.69 payment to Plaintiffs. *See* Ex. [57-27] (State Farm's May 4, 2022 estimate).

Ware admitted at his deposition that he did not opine on any items' pre-loss depreciation or the causes of any of the damages listed in his report. *Id.* at 14, 23. During the deposition, Defendant's Counsel pointed out that State Farm had received invoices from Plaintiffs for repairs they had already completed on some items, the most substantial of which was for replacing the roofs on Plaintiffs' house, pool house, and detached garage. *See id.* at 15; *see also* Invoices at Ex. [60-9] at 144–50. Ware's original report also contained an estimate of $34,200.00 for debris removal, Ex. [60-4] at 133, but Defendant's Counsel stated, "we've been provided [an estimate] for debris removal by Rick Bradley. And he's got a total of 13,000 [dollars] and change," *id.* at 19. The record contains an invoice for $13,642.50 from Rick Bradley for debris removal. *See* Ex. [61-5] at 73–74.

As discussed in the Court's Order [93] Denying Defendant's Motion [52] to Strike Supplemental Report, and Granting in Part and Denying in Part Defendant's Motion [55] to Exclude Bobby Ware, Ware acknowledged that he had erred by not incorporating the invoices into his initial report. *See* Order [93] at 6–11. He also admitted to other errors in his estimate. *See id.* Ware then prepared an estimate to

correct for these omissions, Ex. [52-4], and Plaintiffs submitted a supplemental report the afternoon of his deposition, Doc. [49].

D.    <u>Plaintiffs' supplemental expert report</u>

Ware's revised estimate, attached to the supplemental report, included several adjustments, the most significant of which was replacing most of the costs he had estimated for the roofs with the amounts Plaintiffs had actually been billed by two companies, New Horizon Roofing & Exteriors and Gulfeagle Supply.  *See* Ex. [52-4] at 4.  Plaintiffs paid New Horizon Roofing & Exteriors $26,150.00, and Gulfeagle Supply $33,159.10, according to the estimate.  *See id.*; Ex. [60-9] at 144–47 (Gulfeagle invoice);[2] *id.* at 149–50 (New Horizon Roofing & Exteriors invoice). Most of the line items in the revised estimates for the roofs were subsumed by "per invoice," except for a few items that were replaced by other invoices, adjusted to account for more accurate dimensions and costs, or retained from the original estimate.  *See* Order [93] at 9–11 (outlining changes in the revised report).

Ware's supplemental report also replaced a quote from Gate Electronic Environments for $12,858.31 for repairing Plaintiffs' gate with three items based on three invoices: item 4, "Spence Rees" gate operators, for $5,800.00; item 12, "Nav. system," "Key Pad for front gate replaced due to lightening strick, [sic]" for $824.18; and item 13, "Nav system," "replacement of camera at front gate and to rerun underground wire to camera from inside of home," for $4,943.72.  *Id.* at 2.  The

---

[2] The record contains two Gulfeagle invoices, the second of which contains a revised bill of only $32,666.59.  Ex. [60-9] at 146–47.  The second invoice is labeled "after credits" in pen and includes a few deductions for what appear to be unused materials contained in the first invoice.  *Id.*

record contains an invoice from Spence Rees for $5,800.00, Ex. [61-5] at 65, from Nav Systems for $1,909.95, *id.* at 69, and from Nav Systems for $3,922.62, *id.* at 70. Ware also replaced a Rick Bradley invoice line item for "electrical" services from the original report for $8,520.44, Ex. [52-3] at 6, with a corrected value of $5,529.87, Ex. [52-4] at 2; *see* Ex. [60-4] at 151 (invoice for $5,529.87 from Rick Bradley). Defendant's Counsel had pointed out the "discrepancy" between the Rick Bradley invoice Plaintiffs had disclosed and Ware's estimate during his deposition, and Ware called the error another "typo." *Id.* at 17.

Ware also replaced an estimate of $34,200.00 for debris removal, Ex. [52-3] at 11, with an invoice for debris removal from Rick Bradley for $13,642.50, Ex. [52-4] at 7; *see* Ex. [61-5] at 73 (Rick Bradley Debris Removal Invoice).  And given work State Farm had already performed and paid for, Ware removed two of the three line items from the Fence category, which reduced that revised estimate from $14,191.53 to $4,910.34.  *See* Ex. [52-3] at 12; Ex. [52-4] at 7.

## II. DISCUSSION

A.    Summary judgment standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party can show there is no genuine dispute of material fact by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

support the fact." Fed. R. Civ. P. 56(c)(1)(B). The movant must "identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact.'" *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

If the movant carries its initial burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Pioneer Expl., L.L.C.*, 767 F.3d at 511 (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)). When considering the record, the Court must view all evidence in the light most favorable to the nonmovant and draw all reasonable inferences in his favor. *Id.* But if the nonmovant cites evidence that "'is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)).

B.   State Farm's request for summary judgment on issues of causation and depreciation

1.   Substantive law applicable to breaches of insurance policies

Plaintiffs' claims against State Farm for breach of their insurance policy arise under state law.  Under the *Erie*[3] doctrine, this Court applies state law when exercising subject-matter jurisdiction under 28 U.S.C. § 1332.  "Under Mississippi law, the plaintiff bears the burden of proving his right to recover under an insurance policy." *Tuepker v. State Farm Fire & Cas. Co.*, 507 F.3d 346, 356 (5th Cir. 2007).  "That basic burden never shifts from the plaintiff." *Britt v. Travelers Ins. Co.*, 566 F.2d 1020, 1022 (5th Cir. 1978).

In considering an insurance policy, the Court must "render a fair reading and interpretation of the policy by examining its express language and applying the ordinary and popular meaning to any undefined terms." *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 609 (Miss. 2009) (internal quotation marks and citation omitted).  "In Mississippi, insurance policies[] are contracts, and as such, they are to be enforced according to their provisions." *Id.* (citation omitted).  The key issue in a case concerning a claimed breach of an insurance contract is whether the insurer owes any insurance proceeds to the policyholder. *Thomas v. Nationstar Mortg., LLC*, No. 2:22CV88-HSO-LGI, 2023 WL 2780360, at *9 (S.D. Miss. Feb. 6, 2023) (citing *Mahli, LLC v. Admiral Ins. Co.*, No. 1:14-cv-175-KS-MTP, 2015 WL 4915701, at *16 (S.D. Miss. Aug. 18, 2015)).

---

[3] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

"[A] plaintiff seeking monetary damages for breach of contract must put into evidence, with 'as much accuracy as' possible, proof of the damages being sought." *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1225 (Miss. 2012) (quoting *Thomas v. Global Boat Builders & Repairmen Inc.*, 482 So. 2d 1112, 1116 (Miss. 1986)). "Without proof of actual monetary damages, a plaintiff cannot recover *compensatory* damages under a breach-of-contract action." *Id.* (emphasis in original).

2.  <u>Defendant is entitled to summary judgment on any unrepaired items and on repaired items for which Plaintiffs lack admissible lay testimony on the issue of causation</u>

State Farm argues that Plaintiffs lack competent evidence to prove their claims, and that they cannot do so without expert testimony.  Memo [58] at 13. State Farm points out that Ware does not even purport to testify about causation, *see* Ex. [60-4] at 23, and that Plaintiffs cannot establish damages to unrepaired items under their policy without factoring in depreciation, which Ware also does not purport to do, Memo [58] at 14; Ex. [60-4] at 23.

Turning first to Plaintiffs' claims for items that were not repaired, the Court has excluded Ware's opinion on the damages for these items, Order [93] at 22, because Ware did not factor in depreciation, *see* Ex. [60-4] at 23, a plainly necessary component of damages under the insurance policy, *see* Ex. [55-1] at 20.  Plaintiffs have no other expert to establish depreciation, even though courts generally require expert testimony to establish depreciation.  *See, e.g.*, *Penthouse Owners Ass'n v. Certain Underwriters at Lloyd's*, No. 1:07CV568 LTS-RHW, 2009 WL 617914, at *1–2 (S.D. Miss. Mar. 11, 2009) (discussing how issues of valuation of damages,

15

including calculation of replacement cost value, actual cash value, and depreciation, in a property insurance dispute case require expert testimony).  Plaintiffs therefore cannot "put into evidence, with 'as much accuracy as' possible, proof of the damages being sought." *Bus. Commc'ns*, 90 So. 3d at 1225 (citation omitted).  The Court will accordingly grant State Farm's Motion [58] for Summary Judgment as to any unrepaired items.  That appears to include, for example, fully resurfacing Plaintiffs' pool, given Ware's supplemental report includes an estimate without a reference to an invoice for that line item, *see* Ex. [52-4] at 2, and Plaintiffs did not list the pool in an interrogatory response to a question about what items they have already repaired or replaced, *see* Ex. [61-5] at 34–36.

Ware likewise testified at his deposition that he will not offer any opinion on the causes of Plaintiffs' losses.  *See* Ex. [60-4] at 14, 23.  Ware is Plaintiffs' only expert, and for many of the line items in his report, Plaintiffs cannot establish causation by lay testimony.  "[T]he distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *United States v. Sosa*, 513 F.3d 194, 200 (5th Cir. 2008) (quoting Fed. R. Evid. 701, advisory committee notes to 2000 amendments).

This Court has explained how structural damages to homes, the long-term effects of moisture on a house, and other categories of property damage require expertise to accurately understand, and are therefore not properly the subject of lay

opinion on causation. *See Robinson-Lewis v. State Farm Fire & Cas. Co.*, No. 1:22CV186-LG-RPM, 2023 WL 7929006, at *2–4 (S.D. Miss. June 5, 2023) (granting summary judgment to insurer when the Court excluded the plaintiffs' expert on the cause of "any covered damage for which [the plaintiffs had] not been compensated," which the plaintiffs claimed included covering the replacement of their roof, given the plaintiffs could not "demonstrate that State Farm breached the insurance contract without expert testimony"); *Parker v. State Farm Fire & Cas. Co.*, No. 2:22-CV-45-HSO-BWR, 2023 WL 4425599, at *3–4 (S.D. Miss. May 22, 2023) (granting summary judgment to insurer after excluding the plaintiff's expert on causation and scope of damages in a dispute about insurance coverage for damages after a windstorm); *O'Neil v. Allstate Prop. & Cas. Ins. Co.*, No. 5:17-CV-70-KS-MTP, 2018 WL 4001978 at *5 (S.D. Miss. June 25, 2018) ("[T]estimony regarding the causation of structural damage of this sort [i.e., property and foundation damages allegedly caused by a lightning storm or subsequent attempts to repair] exceeds the scope of permissible opinion testimony for lay witnesses because it requires specialized or technical knowledge, experience, or training."); *Palmer v. Sun Coast Contracting Servs., Inc.*, No. 1:15cv34-HSO-JCG, 2017 WL 3222009, at *2 (S.D. Miss. July 27, 2017) ("Plaintiffs offer no legal authority to support their position that they themselves as lay witnesses are qualified to offer opinions on causation as it pertains to [alleged mold, mildew, or termite damage] . . . because it is clearly based on scientific, technical, or other specialized knowledge within the scope of Rule 702."); *see also Hardin v. Town of Leakesville*, 345 So. 3d 557, 565 (Miss.

2022) (concluding that whether water seepage proximately caused damage to the plaintiff's home required specialized knowledge under Rule 702 because the plaintiff and her witnesses did not observe the water seepage).  Accordingly, the Court will also grant summary judgment as to any items for which Plaintiffs lack admissible lay testimony to establish causation.

While State Farm did not make specific arguments as to why Plaintiffs need expert causation testimony for each line item in Ware's report, it made specific arguments about some of Plaintiffs' claimed losses.  The largest such loss constituted the roofs on all of Plaintiffs' structures, which Plaintiffs have fully replaced.  *See* Ex. [61-5] at 34 (listing roof repairs as an item Plaintiffs have already repaired in a response to an interrogatory).  State Farm points to Hassenboehler's Supplemental Report [57-36] to show that Plaintiffs need expert testimony to establish the cause of their roof damages.  Hassenboehler examined the roofs and distinguished which parts of them were damaged in a manner consistent with damage from windstorms, and which parts were not so damaged.  *See* Ex. [57-36]. The report's discussion of why certain scratches and the presence of unsealed shingles do not constitute windstorm damage illustrates the technical knowledge required to accurately determine the cause of the damages to Plaintiffs' roofs.  *See id.*; *see also Robinson-Lewis*, 2023 WL 7929006, at *2–4.

Plaintiffs' Response Memorandum [71] only confirms the need for "scientific, technical, or other specialized knowledge within the scope of Rule 702," Fed. R. Evid. 701(c), to establish the cause of the damages to the roof.  In their Response

[71], Plaintiffs cite a statement by their roofer, Michael Overfield, analyzing the cause of the roof damages:

> There are numerous reasons or possibilities why shingles on a roof could be considered damaged by high winds as in the case of the happenings of hurricane Zeta between the dates of October 24 through October 30 of 2020. The major issue that was overlooked was the broken seal between the layers of the shingles that caused shingles to be separated from each other which will cause the roof to be prone to leaking and not perform under manufacturer specification during any future storms. This condition existed on the majority of the roof system. This failure is not seen to the naked eye as the wind will lift up any shingle causing the seal to be broken and the[n] lay back down. After several cycles of seal breakage due to wind, dust and dirt will trap between the layers of shingles causing the lack of future adhesion from the factory sealant that is originally applied. This wind cycle also caused nails to pop through the existing shingle. Wind created from hurricane Zeta adversely affected the long-term performance of the shingles and sealant.

Memo [71] at 3. Mr. Overfield's statement plainly exhibits technical analysis requiring specialized knowledge and "results from a process of reasoning which can be mastered only by specialists in the field" of roof repair. *Sosa*, 513 F.3d at 200 (quoting Fed. R. Evid. 701, advisory committee notes to 2000 amendments). Plaintiffs did not designate Mr. Overfield as an expert witness, and he therefore cannot offer his causation opinion at trial. The Court will therefore grant Defendant summary judgment as to the roof repair damages because Plaintiffs "cannot produce admissible evidence to support" causation as to roof damage. Fed. R. Civ. P. 56(c)(1)(B).[4]

---

[4] Of the handful of other line items of damages that Defendant asserts require expert testimony to establish—including resurfacing the pool, repairing interior windows, addressing interior mold growth, lightning damage, and fixing the gazebo's foundation, Memo [58] at 12—the record is not clear which of these Plaintiffs have already repaired and which would actually require expert testimony for causation.

The Court notes, however, that lightning damages to the electrical components of Plaintiffs'

The Court is of the view, however, that if Plaintiffs are able to offer admissible lay testimony on causation as to certain damages, Plaintiffs can establish damages for any of those items that have actually been repaired. As discussed in the Court's Order [93], Mr. Ware can opine on whether the completed repairs that Plaintiffs have already paid for were actually necessary, as State Farm's policy requires, if there is other admissible lay testimony sufficient to establish causation for that loss. *See* Ex. [55-1] at 37 ("[W]hen the repair or replacement is actually completed, [State Farm] will pay the covered additional amount [the insured] actually and necessarily spen[t] to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less.").

So, Ware can opine on—and Plaintiffs may have competent and admissible evidence to show—the total cost of repairs for replaced items if there is admissible

---

gate may require technical expertise to explain, even though the Court is not persuaded that Defendant has met its initial summary judgment burden to demonstrate that, under the facts of this case, Plaintiffs could not establish lightning-strike damages through lay testimony. Defendant's Memorandum [58] only argues that lightning damage generally requires expert testimony. Memo [58] at 17 (citing *O'Neil*, 2018 WL 4001978 at *1, *5 (granting summary judgment to defendant-insurer because plaintiffs lacked expert causation testimony; the plaintiffs claimed "that a lightning strike created an 'explosive shockwave' which shifted the house's foundation, causing structural damage throughout," while the defendant countered with expert testimony "that the damage was caused by normal soil movement over a period of years")). Defendant's argument is not sufficiently fleshed out to "show that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law" about any lightning-strike damages. Fed. R. Civ. P. 56(a). The Court does not agree that a lay witness generally cannot observe lightning cause property damage, and *O'Neil* involved a different and plainly complex causation problem involving the effects of a lightning strike and/or soil movement on a structure's foundation. *See O'Neil*, 2018 WL 4001978 at *1, *5. The Court is not prepared, at this stage, to find that Plaintiffs cannot proceed to trial on the mechanical gate components damages, notwithstanding that their Response Memorandum [71] did not identify how they *can* establish lightning-strike damages through lay testimony. *See* Fed. R. Civ. P. 56(c)(1) (providing that parties must cite the record to show that a fact is genuinely disputed); *Little*, 37 F.3d at 1075 (explaining that, "[i]f the moving party fails to meet [its] initial burden" to demonstrate the absence of a material factual dispute, "the motion must be denied, regardless of the nonmovant's response").

lay testimony offered by Plaintiffs at trial on causation—for example, that they witnessed the hurricane knock down trees on their property, or that they reasonably inferred that the hurricane knocked those trees down.  *See* Fed. R. Evid. 701(a) (providing that lay "testimony in the form of an opinion is limited to one that is . . . rationally based on the witness's perception"); Order [93] at 25–26 (discussing how tree removal does not necessarily require expert testimony on causation).  The Court will therefore deny Defendant's Motion [57] for Summary Judgment to the extent Plaintiffs can establish the cause of their losses by admissible lay testimony.

C.    State Farm's alternative request for partial summary judgment on punitive and extra-contractual damages

1.    Applicable legal authority

A claim that an insurer delayed payment in bad faith requires proof of three elements:

> 1) State Farm [owed] a contractual obligation to [Plaintiffs];
>
> 2) State Farm lacked an arguable or legitimate basis for its delay in paying [their] claim; and
>
> 3) State Farm's failure resulted "from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an intentional tort."

*James v. State Farm Mut. Ins. Co.*, 743 F.3d 65, 70 (5th Cir. 2014) (quoting Jeffrey Jackson, Miss. Ins. Law & Prac. § 13.2 (2012)).  "[W]hether to submit a delay-of-payment claim to a jury is a highly fact-sensitive analysis," *id.*, and "[t]he totality of the circumstances and the aggregate conduct of the defendant must be examined before punitive damages are appropriate," *Dey v. State Farm Mut. Auto. Ins. Co.*,

789 F.3d 629, 633 (5th Cir. 2015) (quoting *Hartford Underwriters Ins. Co. v. Williams,* 936 So. 2d 888, 896 (Miss. 2006)).

To the extent that State Farm did not actually owe Plaintiffs coverage for a given loss, State Farm cannot, as a matter of law, have denied or delayed payment for that loss in bad faith. *See Porter v. Grand Casino of Mississippi, Inc.-Biloxi*, 138 So. 3d 952, 957 (Miss. Ct. App. 2014), *aff'd sub nom. Porter v. Grand Casino of Mississippi, Inc.*, 181 So. 3d 980 (Miss. 2016) ("Because [the plaintiff's] loss was not covered, her claim for bad-faith denial of coverage against State Farm necessarily fails as a matter of law.").

Insofar as State Farm breached its policy with Plaintiffs, they can still only recover for bad-faith breach-of-contract if State Farm lacked an arguable basis for denying coverage, or for delaying payment to Plaintiffs. An "arguable basis" is "nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to [the] heightened level of an independent tort." *Univ. Life Ins. Co. v. Veasley*, 610 So. 2d 290, 293 (Miss. 1992) (quoting *Pioneer Life Ins. Co. of Ill. v. Moss*, 513 So. 2d 927, 930 (Miss. 1987)).

The arguable basis inquiry proceeds through a burden-shifting framework. "The initial burden placed on the insurer is low: it need only show that it had reasonable justifications, either in fact or in law for its actions." *James*, 743 F.3d at 70 (internal quotation marks and citation omitted). If the insurer meets this initial burden, "the insured bears the burden of demonstrating that the insurer had no arguable reason" for the delay. *Id.* (citing *Caldwell v. Alfa Ins. Co.*, 686 So. 2d 1092,

1097 (Miss. 1996)).  "A plaintiff has 'a heavy burden in demonstrating . . . that there was no reasonably arguable basis for denying the claim.'"  *Dey*, 789 F.3d at 633 (quoting *Windmon v. Marshall,* 926 So.2d 867, 872 (Miss. 2006)) (alteration in original).  And a "plaintiff's burden in this respect likewise exists at the summary judgment stage where the insurance company presents an adequate prima facie showing of a reasonably arguable basis for denial so as to preclude punitive damages."  *James*, 743 F.3d at 70 (internal quotation marks and citation omitted).  Importantly, "[t]he question of whether State Farm had an arguable basis" for how it handled the Jacksons' claim "is an issue of law for the court."  *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 628 (5th Cir. 2008) (internal quotation marks and citation omitted).

When considering bad-faith delay claims, the Court bears in mind that "Mississippi law imposes on insurers a duty to perform a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation."  *Dey*, 789 F.3d at 633 (internal quotation marks and citation omitted).  "To qualify for punitive damages for negligent claim investigation, the level of negligence in conducting the investigation must be such that a proper investigation by the insurer would easily adduce evidence showing its defenses to be without merit."  *Broussard*, 523 F.3d at 630 (internal quotation marks and citation omitted).

If a plaintiff can establish that the defendant-insurer denied or delayed coverage without an arguable basis, in order to recover punitive damages, she must

also establish "that the insurer acted with (1) malice, or (2) gross negligence or reckless disregard for the rights of others." *Stewart v. Gulf Guar. Life Ins. Co.*, 846 So. 2d 192, 200 (Miss. 2002). The Mississippi Supreme Court has emphasized that "'the fact that an insurance company lacks a legitimate or arguable reason for denying a claim *does not automatically lead to the conclusion that the issue of punitive damages should be submitted to the jury.*'" *Id.* at 201 (quoting *Pioneer Life,* 513 So. 2d at 930) (emphasis in original). So, "the trial court still must determine whether there is a jury issue as to the insurer's having committed a willful or malicious wrong, or acted with gross or reckless disregard for the insured's rights." *Id.* "Bad faith" by an insurer "must be more than 'mere negligence, inadvertence, clerical errors, or honest mistakes.'" *Dey*, 789 F.3d at 634 (quoting Jeffrey Jackson, Miss. Ins. Law and Prac. § 13:8 (2014)). "The Mississippi Supreme Court has often stated that punitive damages are appropriate only in the rare and extreme case." *Greer v. Burkhardt*, 58 F.3d 1070, 1074 (5th Cir. 1995) (citing *Veasley,* 610 So. 2d at 293–94, and *Finkelberg v. Luckett,* 608 So. 2d 1214, 1220–21 (Miss. 1992)).

If a trial court finds there is a genuine factual question about the arguable basis step, but not the malice or gross negligence step, then it should instruct the jury on "extra-contractual damages," but not punitive damages. *Fulton v. Mississippi Farm Bureau Cas. Ins. Co.*, 105 So. 3d 284, 288 (Miss. 2012) ("When an insurer denies a claim without an arguable basis, but the jury does not award punitive damages, extracontractual damages may provide an intermediate form of

relief."). "[I]n the insurance context, 'extracontractual damages' are not punitive damages in the traditional sense"; they "are awarded when punitive damages are not, and are intended to cover reasonably foreseeable costs and expenses, such as attorney's fees." *Id.* at 289 (citing *Veasley,* 610 So. 2d at 295). The Mississippi Supreme Court has also "upheld an award of $500 in mental anguish damages" even when it vacated a punitive-damages award. *Greer*, 58 F.3d at 1073 (citing *Veasley*, 610 So. 2d at 295). The Fifth Circuit has held, however, that even in insurance disputes, Mississippi law "permits mental anguish damages only where the injury results in a medically cognizable condition which requires professional medical treatment." *Id.* (citing *Strickland v. Rossini,* 589 So. 2d 1268, 1275 (Miss. 1991), *Veasley*, 610 So. 2d at 295, and *Finkelberg,* 608 So. 2d 1214 at 1218–21).

2. <u>Defendant is entitled to partial summary judgment as to claims for bad-faith and extra-contractual damages</u>

Defendant argues that it had arguable bases to delay paying out Plaintiffs' claims, and that, assuming any further coverage is due, it had arguable bases to issue the payments that it did. *See* Memo [58]. Defendant has detailed the history of the Jacksons' claim and argued why most of the periods of delay were attributable to Plaintiffs or their contractors. *See id.* at 3–13, 24–25. State Farm also contends that, to the extent that it took time to investigate and substantiate Plaintiffs' claimed losses, it was discharging its obligation to investigate Plaintiffs' claims. *Id.*

The Court is satisfied that Defendant has cleared its initial, "low" burden to "show that it had reasonable justifications . . . for its actions." *James*, 743 F.3d at

70 (internal quotation marks and citation omitted).  State Farm inspected the

Jacksons' property within a few weeks of receiving their claim, and identified many

of the damages that its notes indicate Plaintiffs had reported, including some roof

damages, tree debris, and fence damages.  Ex. [57-4] at 30–31, *see* Ex. [57-8] (initial

estimate).  Plaintiffs did not submit their own estimate until May 24, 2021.  Ex. [57-

10] at 1.  Defendant points to evidence in its claim notes and in correspondence with

Plaintiffs and their contractors, Ware and Perry, that it promptly resumed

investigating Plaintiffs' claims after receiving Ware's estimate, and the parties were

eventually able to a schedule another inspection in September 2021 after delays due

to matters outside their control.  *See* Ex. [57-4] at 19–22.

Following the September 2021 inspection, State Farm adjusters continuously

attempted to obtain documentation to support Plaintiffs' claims for pool damage,

gazebo damage, and electronic gate damage.  *Id.* at 14–16.  The claim notes

document reasonable concerns with Plaintiffs' evidence to support several of their

claims.  *See id.* at 14–18.  State Farm was investigating whether Plaintiffs had

photographs of the downed trees, what caused any pool damages, and whether

Plaintiffs were attempting to obtain reimbursement for a mechanical gate

component that was more valuable than the one they owned at the time of the

storm.  *See id.*  After receipt of further documentation from Perry on December 1,

2021, State Farm continued to have questions about the necessity of fully

resurfacing Plaintiffs' pool based only on photographs of rust stains on the pool's

26

liner, about the mechanical gate, and about Plaintiffs' evidence of over $13,000 in debris removal. *See id.* at 9–13.

The following month, State Farm reinspected the property. *Id.* at 9. It determined that it needed an engineering inspection, *id.*, and sent Mr. Hassenboehler to conduct such an inspection in March 2022, Ex. [57-35] at 2. He wrote a report on the causes of Plaintiffs' damages, *id.*, and, after revising the estimate in accord with the engineering report, State Farm sent Plaintiffs a $55,581.69 payment on May 4, 2022, Ex. [57-27].

The foregoing does not support a finding of unreasonable conduct by State Farm. Rather, State Farm reasonably investigated Plaintiffs' claims. *See Pilate v. American Federated Ins. Co.*, 865 So. 2d 387, 394 (Miss. Ct. App. 2004) ("Since an insurer has an obligation under Mississippi law to investigate claims, discharging that duty is not bad faith.") (quoting Jeffrey Jackson, Miss. Ins. Law § 12:5 (2001)). Many of the delays were attributable to delayed responses by Plaintiffs' contractors in submitting information State Farm requested, or to events out of either party's control. *See id.* at 399 (considering the extent to which the plaintiff caused delays in processing his claim). After obtaining information from the Jacksons' contractors, State Farm needed an engineering report to determine which losses the policy covered. The record does not support that State Farm could have easily adduced evidence that it undervalued the Jacksons' claim. *See Broussard*, 523 F.3d at 630.

Plaintiffs' arguments in their Response Memorandum [71] do not suffice to raise a genuine issue of material fact that they could meet their "heavy burden" at trial to show that "there was no reasonably arguable basis for" Defendant's conduct. *Dey*, 789 F.3d at 633 (internal quotation marks and citation omitted).  Plaintiffs' arguments boil down to two points: (1) that the Court should infer from State Farm's eventual $55,581.69 payment on May 4, 2022, almost two years after the hurricane, that State Farm must have lacked a reasonable basis for not previously paying Plaintiffs that amount; and (2) that deposition testimony describing State Farm employees' conduct during site inspections shows that they conducted grossly inadequate inspections.  *See* Memo [71].  Neither argument is persuasive.

Plaintiffs' first contention is inconsistent with applicable law.  All that a jury could infer from State Farm's subsequent payment to the Jacksons, in and of itself, is that State Farm did not correctly estimate the scope and value of damages to their property at the first inspection.  If an incorrect initial estimate established that an insurer lacked an arguable basis for that estimate, then a finding that the insurer breached its policy would automatically establish that it also lacked an arguable basis for its decision, collapsing the first and second prongs of the test for bad faith.  *See James*, 743 F.3d at 70.  That explains why the Fifth Circuit has held that insurers had arguable bases for their conduct in cases where the jury found that they in fact owed more to the plaintiffs than they had already paid.  *See Dey*, 789 F.3d at 632–34; *Briggs v. State Farm Fire & Cas. Co.*, 673 F. App'x 389, 392 (5th Cir. 2016) ("Ultimately, the jury found that State Farm should have paid more

than it did but still an amount less than the policy limit.  The evidence reflects that this case presented a pocketbook dispute between the parties and that State Farm's claim position was at least arguable.").

Plaintiffs' second argument is likewise unpersuasive because it is unsupported by the record.  Instead, Plaintiffs cite deposition testimony that amounts to no more than "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation," which "do not adequately substitute for specific facts showing a genuine issue for trial." *Pioneer Expl., L.L.C.*, 767 F.3d at 511 (internal quotation marks and citation omitted).

Plaintiffs first cite Bobby Ware's deposition testimony describing his interactions with State Farm personnel during a site inspection on March 19, 2021. The key portions read:

> Defendant's Counsel: Can you tell me anything about conversations you had with the adjuster?  Do you remember your interactions with him or her?
>
> Ware: He was looking at the roof and the gutters.  So we had to get the tarps removed so he could view the roof. . . .
>
> Defendant's Counsel: Do you remember any conversations at all with the adjuster on this particular inspection?
>
> Ware: No.  Other than just him inspecting the roofs.
>
> Defendant's Counsel: All right.  And then there was another inspection at some point after that, right?
>
> Ware: Correct.
>
> Defendant's Counsel: And was that the next time you were at the property?

Ware: Correct.  And I believe it was the same adjuster doing the same inspection.

Defendant's Counsel: Anything from that inspection that you recall in particular?

Ware: No.  Just the same old puppet show.

Defendant's Counsel: Do you recall any specific conversations from that inspection?

Ware: No.

Defendant's Counsel: All right.  Was there another inspection after that?

Ware: Correct.

Defendant's Counsel: Do you recall when that was?

Ware: No, sir.  It was with the State Farm adjuster, though.  It was prior to us meeting out there.

Defendant's Counsel: And so this third inspection that you attended with State Farm adjusters, do you remember that new adjuster's name?

Ware: State Farm should be able to tell us.

Defendant's Counsel: Okay.  Do you remember any conversations with that adjuster?

Ware: Yeah.  We went through the entire -- we went through the entire thing.  He redocumented, remeasured.  Identified water stains on walls, water stains on ceilings, buckling of floors, tears in screens.  Pointed out dents in gutters that the homeowner had identified as being damaged during the event.

Memo [71] at 7–8 (citing Ex. [60-4] at 9–10).

Plaintiffs ask the Court to conclude that this testimony shows that "Defendant's adjuster never even bothered to inspect any of Plaintiffs' damages other than the roof and gutters of the Subject Property," that "Defendant failed to inspect the Subject Property with any greater care or detail during its third in-person site investigation than with its first two inspections," and that Defendant

did not conduct a reasonable investigation until the fourth site inspection by Mr. Hassenboehler, an engineer. *Id.* The Court disagrees. Ware did not specifically testify that the State Farm adjusters refused to inspect any item of claimed damages. All he said was that he could not recall very much from his conversations with the adjusters. His statement that the adjuster "was looking at the roof and the gutters" in response to a question about conversations he had with the adjuster does not equate to testimony that the adjuster *only* looked at the roof and the gutters. Ex. [60-4] at 9. Nor can this vague statement create a genuine dispute as to State Farm's internal records indicating that it considered damages to the gazebo, electronic gate, and fence, along with the extent of debris removal. *See* Ex. [57-4] at 18 (claim notes); Ex. [57-21] (October 25, 2021 letter to Perry requesting documentation).

Similarly, Gary Jackson's testimony about his interactions with State Farm personnel does not go beyond generalized assertions that are insufficient to create a specific issue of material fact. Plaintiffs highlight the following testimony from Gary Jackson's deposition:

> State Farm came out there a couple of times. The first time the guy came out there, soon after the storm, I had to make him look at the damaged fence. I had to make him walk down to the gazebo. He didn't want to be there. He did absolutely nothing. And then I would say, well, what about this over here? And then he would be disgusted  that we had to go look at something else. And he had another guy with him, and I think it was the guy's first job. And I said, well, we've got some damaged fence over here. And so he said—told that other guy to go over there and measure it. That guy couldn't even work the tape measure. It was that bad. So after leaving, they determined that I didn't have enough for a claim at some point thereafter. And I said, yeah, I do, because this doesn't include this, this, this, and this. The guy didn't look

> at this, this, this and this.  And they said, okay, well, you've got to submit
> documentation for that.  So, at that point, I had to hire a contractor.

Memo [71] at 9 (quoting Ex. [61-5] at 11).  Mr. Jackson also stated, "The [first] guy

didn't do a very good job," and:

> [T]he conversations I had with them was, well, I need to show you this,
> or I need to show you that, or we need to walk down to the gazebo, or I
> need to show you the fence, or what about the pool.  And he was steadily
> trying to get in his vehicle to leave.  He wasn't interested in me taking
> him around and showing him damage.

*Id.* (citing Ex. [61-5] at 22).

While Mr. Jackson clearly believes that State Farm's initial inspection was

substandard, he does not provide any specific testimony about an item that the

adjuster refused to examine.  Nor do Plaintiffs draw a line from the adjuster's lack

of interest in inspecting any of the items that Mr. Jackson referenced to an

unreasonable damages estimate by State Farm.  For example, even if the adjuster

could not use a tape measure, Plaintiffs do not explain how State Farm measured

the fence improperly, or how any such measurement caused an underestimate of

fence damages.  *See* Memo [71].  While the adjuster may have had a bad attitude,

Mr. Jackson's testimony does not identify any damages that the adjuster refused to

examine or lacked the competence to examine.  *See id.*

Plaintiffs also extensively quote Linda Jackson's deposition testimony about

interior mold growth in their home and its effect on their family.  Memo [71] at 10–

12.  But none of this testimony shows that Plaintiffs suffered a cognizable medical

condition from any mold growth.  *Greer*, 58 F.3d at 1073 (discussing how Mississippi

law "permits mental anguish damages only where the injury results in a medically cognizable condition which requires professional medical treatment").

Because State Farm has shown that no genuine issue of material fact exists about whether it had arguable reasons for its conduct in handling the Jacksons' claims, it is "entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a), on Plaintiffs' claims for punitive damages and extra-contractual damages, *see United Servs. Auto. Ass'n (USAA) v. Lisanby*, 47 So. 3d 1172, 1178 (Miss. 2010) ("Because USAA had an arguable basis for its denial, the defendants are entitled to judgment as a matter of law on the issues of emotional distress damages, attorneys' fees, and litigation expenses."). And even if Plaintiffs could meet their burden to show that State Farm acted without an arguable basis for its conduct, Plaintiffs could not recover mental anguish damages because they do not have any evidence that they have sustained "a medically cognizable condition which requires professional medical treatment." *Greer*, 58 F.3d at 1073.

The Court further concludes that, even if the foregoing record evidence exhibited negligence by State Farm, it does not support the malice or gross negligence element of a bad-faith claim. *See James*, 743 F.3d at 70 (the insurer's conduct does not constitute bad faith unless its decisions "resulted from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an intentional tort." (internal quotation marks and citation omitted)). State Farm's internal claim notes and communications with Plaintiffs and their contractors, described above, illustrate that it investigated the Jacksons' claim in

good faith, primarily by searching for evidence of the causes of the Jacksons'
claimed losses.  After receiving additional documentation and obtaining an
engineering report, State Farm adjusted its estimate and paid Plaintiffs additional
money.  *See* Ex. [57-35] (Hassenboehler's report); Ex. [57-27] (May 4, 2022 payment
letter and estimate).  Plaintiffs point to no record evidence that State Farm's
conduct renders this a "rare and extreme case" in which punitive damages are
appropriate.  *Greer*, 58 F.3d at 1074.

Accordingly, to the extent that Defendant State Farm is held liable for
breaching its insurance policy with Plaintiffs, it is nonetheless entitled to summary
judgment on Plaintiffs' claims for punitive and extra-contractual damages.

## III. CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant
State Farm Fire and Casualty Company's Motion [57] for Summary Judgment is
**GRANTED IN PART**, in that Defendant is entitled to judgment as a matter of law
as to damages for any unrepaired items, and as to repaired items where causation
cannot be established by admissible lay testimony, which includes Plaintiffs'
claimed roof damages.  These claims for damages are **DISMISSED WITH
PREJUDICE**.  State Farm's Motion [57] is **DENIED IN PART**, as to damages for
repaired items for which Plaintiffs may be able to offer admissible lay opinion
testimony at trial on causation.

**IT IS, FURTHER, ORDERED AND ADJUDGED THAT**, Defendant State
Farm Fire and Casualty Company's Motion [57] for Summary Judgment is

**GRANTED IN PART**, as to Plaintiffs' claims for extra-contractual and punitive

damages, and these claims are **DISMISSED WITH PREJUDICE**.

      **SO ORDERED** this the 19th day of March, 2024.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE